## APPEAL OF DeBROWN AUTO SALES CO.

Docket No. 2369.    Submitted July 2, 1925.    Decided October 16, 1925.

> Upon the evidence *held*, that certain payments to stockholders during the taxable year were distributions of profits and not bonuses.

*F. W. McReynolds, Esq.,* for the taxpayer.
*Robert A. Littleton, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1919 in the amount of $3,515.44.

### FINDINGS OF FACT.

The taxpayer is a Nebraska corporation with its principal office in Lincoln, and was, during the taxable year in question, engaged in the business of selling and distributing automobiles.

During the taxable year 1919, the taxpayer paid to its officers, directors, and stockholders a total amount as salaries and bonuses of $25,350. Of this amount $6,250 was distributed on August 14, 1919, in proportion to stockholdings in the company.

Prior to the distribution of the above-mentioned amount, and on January 6, 1919, the directors met and transacted the following business, as evidenced by the minutes of that meeting:

Meeting called to order by L. H. DeBrown, Pres. Motion made by W. E. Barkley that same officers be reelected. Seconded by Elsie Pepoon. Motion carried. Motion made by W. E. Barkley to pay a stock dividend of 25%, and a cash dividend of 10 %, the latter to be paid during the year at the time fixed

by the President. Seconded by Elsie Pepoon. Motion carried. Motion made by W. E. Barkley that the President be authorized to fix salaries of all employees including his own. Seconded by C. F. Goddard. Motion carried. Motion made by C. F. Goddard, seconded by W. E. Barkley. Carried.

At the time of the adoption of the above resolution by the directors, the outstanding capital stock of the taxpayer was $50,000. Between that date and the date of payment of the amount here in controversy, the outstanding capital stock was increased by a stock dividend to $62,500. The amount distributed was exactly 10 per cent of the increased capital stock.

On December 31, 1919, a bonus of $12,265 was distributed and included in the above total amount claimed as a deduction by the taxpayer, which amount was not distributed in proportion to the stockholdings of the recipients. One employee, not a stockholder, was included among those to whom distribution was made. W. E. Barkley, who was a stockholder and who, during the year in question, was president of the Lincoln Safe Deposit and Trust Co., was omitted.

During the year 1919 the taxpayer was more than ordinarily successful in its business and received a net income materially in excess of that ordinarily received in previous years, but this unusually large net income was not due to any abnormal conditions respecting capital or income of the taxpayer.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer for the basis of its appeal alleges error on the part of the Commissioner in the disallowance of the above-mentioned special bonus paid on August 14, 1919, and for further relief claims that its tax should be assessed under the provisions of section 328 of the Revenue Act of 1918.

As respects the first point, if the taxpayer's witnesses are to be believed, the alleged bonus of August 14 was a *bona fide* recognition of services rendered and was not a distribution of profits. We are not disposed to. agree with this contention. Frank DeBrown, who kept the minutes of the meeting of January 6, testified in respect thereof on direct examination as follows:

Q. You may state who kept the minutes of the meeting of the Board of Directors on January 6, 1919.

A. I did.

Q. What directors were present at that meeting?

A. L. H. DeBrown, W. E. Barkley, Frank DeBrown, C. F. Goddard and Elsie Pepoon.

Q. You may state the facts and circumstances of the ink lines being drawn through that portion of the minutes providing for the payment of a ten per cent cash dividend.

A. The motion was first made and carried that the company pay a stock dividend of twenty-five per cent and a cash dividend of ten per cent. It was during this same meeting that the question was reopened again, and after further consideration it was decided as being inadvisable to pay any cash dividend and I guess I used the short method of striking it out—or making a change in the minute book by striking it out with a pen, instead of writing the details of the change out in longhand.

Q. Were these lines drawn through that portion of the minutes in that same meeting?

A. Yes, sir.

Q. You may state, Mr. DeBrown, what were the facts that caused the directors in that meeting to decide that it was inadvisable to pay a ten per cent cash dividend.

A. One of the principal reasons was because it would have necessitated our borrowing money to pay it; also it would have reduced our surplus to too low a figure.

It is to be noted that no time was specified for the payment of the dividend and none was specified for the payment of extra compensation. The reason given as to the inadvisability of paying a cash dividend was equally applicable to the payment of a cash bonus. We are of the opinion that the payment on August 14, designated as a "special bonus," was in fact a distribution of profits, and we are confirmed in this opinion (1) because of the manner in which the transaction was handled; (2) because of the diversity of this payment from any others made under the general head of compensation; and (3) because this payment was the only one in which the amounts involved were in proportion to the stockholdings of the recipients. The testimony, particularly with reference to the inclusion of W. E. Barkley in this distribution, is not convincing as to the special reasons for including him in the distribution on August 14 and omitting him from all other compensation for services rendered the company.

The taxpayer also asks that the relief provisions of section 328 of the Revenue Act of 1918 be applied and its tax computed upon that basis. It is apparent from the testimony that the net income of the taxpayer for the year 1918 was large because of the general conditions of prosperity in the country which induced an unusual expenditure for automobiles, and that the taxpayer participated in this unusual prosperity. Section 327 specifically provides, in respect of the application of section 328, that the tax shall not be computed thereunder in "any case * * * in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, * * *."

ARUNDELL not participating.